(C. D. 229)

Steinberger Bros. Glove Corp. v. United States

United States Customs Court, First Division

(Decided October 14, 1939)

*Mary Rehan* for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney, and *Frank X. O'Donnell, Jr.*, junior attorney), for the defendant.

Before Evans, Brown, and McClelland, Judges

McClelland, Presiding Judge: The merchandise the classification of which is the subject of these protests is described on the invoices as "White Doeskin Leather" and was assessed with duty by the collector of customs at the rate of 25 per centum ad valorem under the provision in paragraph 1530 (c) of the Tariff Act of 1930 for—

Leather \* \* \* made from hides or skins of animals (including fish, reptiles, and birds, but not including cattle of the bovine species), in the rough, in the white, crust, or russet, partly finished, or finished \* \* \*.

The claim made in each of the protests is for duty at the rate of 20 per centum ad valorem under the same provision as amended by the French Trade Agreement reported as T. D. 48316 as follows:

Chamois leather in the rough, in the white, crust, or russet, partly finished, or finished, not imported to be used in the manufacture of boots, shoes, or footwear, nor cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear.

There is no question but that the merchandise in issue was imported to be used solely in the manufacture of gloves.

In addition to the official sample, which was received in evidence as Exhibit 1, a large sample conceded by counsel to be representative of the merchandise is in evidence as Illustrative Exhibit A. It consists of a piece of soft white leather. A sample of what is conceded to be natural chamois was also received in evidence as Illustrative Exhibit B.

We find that the evidence offered on behalf of the plaintiff establishes that Illustrative Exhibits A and B were made from what are known as "fleshers" of sheepskins, that is, the undercut of split sheepskins; that both had been oil dressed, and that the only difference between them is that Illustrative Exhibit A, representing the merchandise in issue, had at some stage in the process been subjected to the action of alum or formaldehyde. The evidence is clear that the alum or formaldehyde did not exert a tanning action upon the leather, but merely bleached it white.

Webster's New International Dictionary contains the following definition of "chamois."

A soft, pliant leather, prepared from the skin of the chamois, and also from the skin of the sheep, goat, etc. The process of preparation consists in frizzing the skin and working oil into it to supply the place of the astringent (tannin, alum, or the like) ordinarily used.

The foregoing definition, which we find to be the common meaning of the word "chamois," is in accord with numerous decisions of this court involving chamois skins, among which may be cited *Wm. H. Stiner & Son* v. *United States*, T. D. 30799, and *S. Vollman & Co., et al.* v. *United States*, T. D. 45168.

It appears from the evidence that there is no difference between the common meaning of the term "chamois" and the commercial meaning thereof. The record indicates that the merchandise at bar is known commercially as "chamois" and as "doeskins," both terms being used interchangeably.

Examination of the record as a whole leads to the conclusion that the fact that the merchandise in issue was subjected to the alum or formaldehyde treatment to bleach it white did not take it out of the scope of the meaning of the term "chamois," and since it appears that the commercial meaning of that term does not differ from the common meaning thereof, which therefore controls the classification of the merchandise, we see no reason why the mere fact that it is commercially known interchangeably by another name besides "chamois" should affect its classification under the provision in paragraph 1530 (c) as amended by the French Trade Agreement, *supra*, for "chamois leather."

That claim in each of the protests is therefore sustained, the decision of the collector being reversed. Judgment will issue accordingly.